2014-71-15, Mr. Noguera. Ms. Noguera. Yes, sir. Please proceed. May it please the Court. As you know, this case involves the VA's denial of a rulemaking petition that seeks to reform the adjudication of disability compensation claims for rape survivors in the military. The VA's denial is arbitrary and capricious for one simple reason. The VA's letter provides conclusory assertion, not reason, for denying the petition. Let me ask you a question. I don't find any mention – I couldn't have missed it – of the Department of Defense's SAFRT policy, which they've instituted and extensively revised over the last three or four years, the Sexual Assault Prevention and Response policy. It's both DOD-wide and then service-wide within the services, having their own. Has the VA examined and taken into account any of that? I'm not familiar with the VA's review of SASC policy, Your Honor. The question here is whether the denial and the reasons given in the denial – I understand, but if – the question is also time, place, manner kinds of things about comparing combat to military service. And it seems to me that if the DOD is articulating problems and articulating specific required solutions to them, that it indicates a background of what the service is like. Yes, Your Honor. It would follow that – Did you not raise it at all within the petition or elsewhere? No, Your Honor. Our petition is focused on the regulation under 3.304 and the evidence standards that the VA has articulated in Act 5. Well, you're not satisfying my question, but I'll ask the government as well. I would be happy to follow up with supplemental briefing on that question. Well, do you understand what I'm saying? That maybe I'm not clearly articulating myself. If the VA is denying – actually, affirmatively articulates that military service in general is unlike specific combat service because, geez, once we know that you are in a combat zone at a specific time, then we can presume certain things about your service. It seems to me that they're saying, obversely, well, if you were just in the service, then you weren't exposed necessarily to certain conditions. And the DOD is saying in its SAPR policy, yes, these conditions exist service-wide, and you have to do something about them. You didn't raise any of that? No, Your Honor. Specifics on – Well, I think your petition points out, and I think the VA doesn't dispute, that there's a widespread problem with MST in the service. Is that correct? Yes, Your Honor. It may not go to the details of this new policy and the like, but as far as I can tell, nobody's disputing the widespread existence of a problem with MST in service. Yes, Your Honor. I don't believe that's in dispute. What is in dispute is – Can I ask you this? Because this is where – what I find the most difficult. I mean, in terms of the letter denying the petition, I mean, the Secretary's brief certainly elaborates much further on its reasoning. But it is not clear to me from the letter that VA understands that the circumstances language of that statute could extend to full service as opposed to specific instances of service. Do you have any views on that? Do you think that they – because I ask, because it seems to me that if the Secretary mistakenly understands circumstance retire some specific slice of service as opposed to all service, then that seems to be a legal error in the reading of that statute. That seems to require a remand. Yes, Your Honor. And that's – the problem is in their brief, they certainly disavow that reading and say that this statute could apply, but they chose in their discretion not to use it for various reasons. No, Your Honor. In the denial letter, the VA appears to argue that it does not have the statutory authority to promulgate a presumption similar to the fear-based PTSD regulation. It misunderstands its authority under Section 1154A. Well, can you tell me where it says it doesn't have the authority? This is what I find puzzling. You say it's very clear that they think they don't have the authority. I don't find it that clear that way. Of course. I don't find it that clear on their side either that they think from the denial that they have the authority, but they exercise their discretion to deny. At the bottom of the third page, Your Honor, the VA discusses how under Section 1154A it must consider places, types, and circumstances, and then follows that by saying the VA – excuse me – military sexual trauma is not indisputably associated with places, types, and circumstances. The suggestion in that paragraph is that the request to initiate a rulemaking would fly in the face of Section 1154A. That is not the case. Plainly, the text of the statute is permissive. It's a general grant of authority. It's not a limiting proviso. It only directs the VA to give, in each case, due consideration to places, types, and circumstances. The legislative history of that statute only backs up the idea that the purpose of the statute is to ensure individualized adjudication for veterans who lack records is in no way limiting the VA's authority to promulgate a presumption or to begin a rulemaking process. The legal precedent within this circuit also supports that theory. But in their brief, they certainly at least state on the record that they understand that they do have the authority to do this kind of thing. They've just declined to do so. Yes, Your Honor. Again, the question here though is whether the VA's denial letter was reasoned. The denial letter clearly misunderstands the authority granted to it under Section 1154A. The denial letter also misunderstands the fear-based PTSD regulation. As the VA's own letter admits, that regulation is, in fact, similar to the proposed regulation in the petition for rulemaking. You've argued that the VA letter shows discriminatory animus. Animus is an antagonism showing ill will. Where is the discriminatory animus, whether one could argue with the letter or not? I don't see any animus in there. Yes, Your Honor. Under Village of Arlington, departures from the normal procedure is Vince Discrimination under the Equal Protection Clause. But the court does not need to reach that issue in this case. If we don't reach equal protection, can you still prevail or can we still roll in your favor or not? Yes, Your Honor. In this case, the VA denial letter has misunderstood facts and law and ignored important factors. I think your equal protection argument is by far weaker. Are you going to stand and argue for it now or rest on your… Yes, Your Honor. The equal protection argument is there for a reason. Absolutely, the regulation is discriminatory and violates the Constitution. But to the extent that the court is reticent to get into constitutional matters, it's clear that the denial letter violates the APA's requirement that the agency offer reasoned explanation. Since you say you want to rest as well on the equal protection argument, you'd agree that the classification is not based on gender, right? It could be either gender. Not facially, Your Honor. Okay. So discriminatory purpose has to be demonstrated in this circumstance. Isn't that right? Yes, Your Honor. What's the discriminatory purpose of the rule? The purpose of the rule is to treat MST survivors differently than other veterans who have the exact same medical condition. Being aware of the consequences isn't enough to establish a discriminatory purpose, correct? Yes, Your Honor, but that is the – it's not – they're not aware of the different treatment. It is, in fact, their purpose to effectuate that different treatment. I see I'm running out of my allotted time. If I could quickly just mention the stakes at issue. The VA's denial falls on the shoulder of veterans who have survived rape and sexual assault during their service only to be told that they cannot access the same benefits for the exact same medical condition. In the face of all this, the VA still provides no reasoned explanation for its denial, and therefore the court should therefore vacate and remand back to the agency. Thank you very much. Thank you, Ms. Navarro. Ms. Kidmiller. Good morning, and may it please the court. This court recognizes 2003 decision in Nova, a decision that neither petitioners nor amici recognize. Ms. Kidmiller, I have a bunch of questions, so let's go anyway. The petitioners assert in their petition that MST-related PTSD claimants experienced substantial delays in reaching a final determination. JA-335 in 2011 appeals process took an average 1,123 days from the time the veteran filed her or his notice of disagreement to disposition by the BVA. A remand from the BVA added an additional 427 days to the process before the veteran resolved her claim. What's the average time for combat-related PTSD claims to be adjudicated? I don't know what the equivalent time period is for combat or for other claims. Of course, as this court knows, fully developing and adjudicating many VA claims can take a period of years. I asked you for the average. You don't know the average time for combat PTSD? For combat claims, I do not. Do you acknowledge there's a difference between the two? I do not because I don't know what the numbers are. It would be understandable if combat claims can be processed more quickly because of the typical availability of information regarding a veteran's combat with the enemy that is found in service records, as opposed to these types of claims where VA acknowledges the information that is needed to corroborate the stressor is typically not going to be found in service records. I have lots of questions. I don't want to use up your time to not get answers. In your red brief, you say at 7 and 8, starting in 2005, VA has engaged in an effort to improve the adjudication of MST-related claims beyond promulgation of 3.304F5 by issuing guidance and instituting a substantial number of training programs and so on. These efforts are working and continue today. By working, do you mean improving from a particular level or do you claim that victims of MST now obtain completely fair treatment from the VA? By working, we refer to a number of different measures of improvement, among them an improvement from a 75% accuracy rate for adjudication of these claims in 2011 to 86% in 2013, which is explained at page 116 of the record, is on par with the average accuracy rate for adjudication of all claims across the VA system. Okay. It also refers to… If that's true, then there's research from the American Civil Liberties Union and the Service Women's Action Network report entitled Battle for Benefits. Okay. And that indicates that the St. Paul Regional Office, for example, granted 25.8% of MST-related PTSD claims during 2012 fiscal year and during that same time, the LA Regional Office granted 88.5% of MST-related claims. How do you explain the large inconsistency in grant rates and would you agree that it's due in part, at least, to the high degree of leeway that MST adjudicators have in deciding those PTSD claims? Well, I'm not sure that I can explain with respect to individual ROs, but what I can tell you is that this particular report, these exact statistics were before the Secretary, when making the decision here whether to continue with training efforts that are narrowing the gap between men and women, between MST claims and other PTSD claims, the decision whether to continue with that training that is working, or whether to effectively eliminate any requirements for corroborating evidence. Now, VA, as part of its decision, again, had this information before it and explained in its decision letter the types of training that it's providing to regional offices to help ensure greater… Does Minnesota get the same type of training as California? Pardon me? Does Minnesota get the same type of training as California? Yes, I presume so. It's nationwide training efforts. What explains the distinction, 60% distinction? Well, I think that there's a lot of different things that could explain the distinction. First, I want to note that variation alone doesn't necessarily mean inaccuracy. There could be a lot of differences, reasonable and realistic differences for variations between regional offices. This extent, this degree of variation did cause concern for VA, and VA was aware of this issue prior to the petitioner's rulemaking, and that is in part what led it to initiate these various training programs that are nationwide. When did those training programs go into effect? Most of them went into place around 2011, and then there were some newer ones that came along in the years following. The largest bulk of the training came from…began around 2011. And this was fiscal 2012. Right, so that was… Have those numbers narrowed between, say, Minnesota and California? I don't know about those two specific regional offices. Some of the training efforts that VA is undertaking are, for example, assigning all military sexual trauma PTSD claims to what it calls its special operations lane of adjudication so that now the most experienced, most knowledgeable adjudicators are handling the military sexual trauma claims. Let me shift the focus then. In your red brief at 11, you say, although there is no reason to expect that grant rates for MST-related claims will or should be the same as the overall grant rate for PTSD claims, VA training efforts closed it to within six points. My question is, in looking at this, is why shouldn't the MST rates be higher? At least in cases of sexual assault, wouldn't they all, at least for all intents and purposes, always be severe psychological trauma as opposed to combat, in which it's not always severe psychological trauma? Some people think combat is fun. Your Honor, your question presumes that the claims are being denied because of lack of a nexus between, did this sexual assault cause PTSD? But, of course, the claims are denied for a wide variety of reasons. There are claims that are denied because the individual doesn't have sufficient evidence of having PTSD, even if they can substantiate an in-service sexual assault. Other claims are denied because people never show up for their examination that they're ordered to go to with the VA doctor. So we don't have statistics at this point in the process, which, again, the focus on training and, likewise, the focus on keeping better statistics and record-keeping on these claims started around 2010, 2011. And I don't know that we have them available down to the level of being able to explain why all of that variation exists. Variation is an inherent thing. I have too much to let you go too long. In your red brief at 15, you say, their proposed rule would distinguish MST-related claims from all other PTSD claims, including those filed by veterans who feared hostile military or terrorist activity, those who were engaged in combat, and those who were prisoners of war. How would the proposed rule distinguish MST-related claims from all other PTSD claims? It would make MST-related claims the only claims where the claimant is not required to show – meet any kind of evidentiary threshold for approving the offender. Wait. So I think this is where it relates to the questions I was asking your friend. And I understand your point here, but if it's established that MST is prevalent throughout the circumstances, wouldn't that statute allow VA to make that determination and do precisely that, say the circumstances of MST are prevalent throughout, and so we're not going to require corroborating evidence. We're going to allow lay testimony to suffice as a stressor. Do you think – so it's the same question I asked you. One, do you think VA could do that within the authority of the statute? And two, do you think that the Secretary understood that at the time of the denial? Because it's not clear to me from that letter that the Secretary did. I do not think that the Secretary could implement the regulation proposed by the petitioners precisely as it was proposed by them. No, that's not what I'm asking. So hypothetically, let's say – and I think these facts are undisputed anyway, but you get really, really good studies that say particularly women in military service are subject to MST at substantially higher rates than the general population. This is where presumptions come from for VA for everything. You know this, PTSD, Agent Orange, all these kind of things. But when they do those studies, they don't find it specific to a certain type of combat-related service or on a ship or on a sub. It's consistent throughout. And so looking at that, the Secretary says it is so prevalent and it is so much higher than the prevalence in the general public and the evidence is so hard to come by, we're going to establish a presumption. And it's not really even a presumption. We will allow lay testimony alone, the person's own testimony to suffice as a stressor. Is that within VA's legal authority? Yes, VA could do that. And as Your Honor pointed out, it would not be technically a presumption. It would be a relaxed evidentiary standard. But VA here did not act arbitrary and capricious by failing to do that, to essentially assume or presume. Do you think their letter – do you think – So I understand your brief more fully articulates that rationale. Do you think their letter shows that reasoning? I mean, I'm looking – you can look at the same place we just looked at on pages 3 and 4 of the letter. And it's very close as to whether they think they can do that or they think that saying circumstances is equivalent with every instance of military services beyond statute. Well, I think you have to read – this is 3 and 4 of the letter, 6 and 7 of the record in the full context here. So the paragraph begins – this is the last paragraph on page 6. It's responding specifically to the rule that the petitioners proposed and explaining that that rule does not – because that rule does not contain any kind of time, places, and circumstances requirement, that that is part of the reason – well, that was the reason VA was denying it. And VA makes the point that – and VA and petitioners are in agreement here – that sexual assault is not necessarily associated with any particular time, place, a submarine, a base camp. It can happen anywhere. And that's inherently the challenge here and the one about which petitioners and the VA fundamentally disagree about how you deal with that. Fundamentally, the VA system requires proof of claim. This court held in NOVA that the evidentiary burden in this exact regulation is consistent with the time, places, and circumstances requirements, not arbitrary and capricious. And so VA has decided to deal with this challenge of the fact that sexual assault can happen at virtually any time and any place by enacting this very relaxed rule. Could it enact some sort of – what we're loosely referring to as a presumption? Yes, but it's not arbitrary. Doesn't the combat-related person – somebody says, I served in this place at this time in this unit, and you say, okay, that's enough. Well, you don't say that's enough, but they have to demonstrate that they suffer from PTSD, for example. That is correct, isn't it? That's right. And the person with MST has to suffer – has to demonstrate that they suffer from PTSD under any circumstances. Right. Isn't that right? And the establishment of that – of those factors, startle reaction, insomnia, all those things that go with PTSD are established by independent examination. Isn't that correct? Or an examination through VA. Yeah, that's what I mean. It's not just the person saying it. That's right. And the examiner has the ability to say, no, you don't have a startle reaction, for example, that sort of thing. Isn't that true? So it is put to truth testing. Well, these are – the question is asking about several different elements of the claims. Yes, it is. And the fundamental distinction between these kinds of claims, the proof of the in-service occurrence of a stressor, the fundamental difference between these kinds of claims and the other kinds of claims, is this very point that we've been discussing, that they're not tied to any particular time. Sure, but look, has the military changed that much? I mean, a basic trainee still doesn't have an expectation of privacy, do they? I don't. Okay, well, let's put it this way. If a soldier believes that he's being sexually harassed on the job, he can't go in and say, I quit, can he? Not to my knowledge. I'm not – I'll ask the question and I don't – I'm not familiar with the military. Without being sent to portions of naval prison. Are we dealing with soldiers here or veterans? We're dealing with veterans. The benefits are not awarded because someone has been sexually assaulted. They're awarded because someone is suffering from PTSD that was caused by an in-service sexual assault. The petitioners own – petitioners agree and cite both in their petition and endorse a VA statistic that one in five women veterans report having been sexually assaulted, and one out of 100 men. VA has declined to presume that everyone who serves in the military was sexually assaulted and instead promulgated this very relaxed and broad-ranging way to present corroboration of a claim. It can be a post-service medical opinion. Are the corroboration standards any different for women than for men? No, Your Honor. They're exactly the same. It's a facially neutral regulation and there's been no evidence of any kind of purposeful discrimination here. So it passes the constitutional concerns that petitioners raise. Do you have any summary, final summary thoughts? No, I see that I'm past my time. I would just ask this Court to hold that VA's decision to continue with its training that is working rather than revise the regulation that this Court previously upheld is not arbitrary and secretion. I have a small question. I have a small question. Am I correct? You're familiar with AZ v. Shinseki? Yes. Okay. You don't dispute the holding in AZ. I think the VA is taking a position consistent with that. That lay testimony can corroborate. Yes, yes, absolutely. The VA does not dispute, I'm quoting, that in the great majority of cases, such incidents are not reported to military authorities and therefore such records do not exist. Exactly. That part. That's the whole purpose behind this regulation is that recognition. One last thing, and that is ACLU in their amicus talks about the subjective nature of assessments and invites adjudicators to assess claims according to personal biases. That was sort of that Minnesota versus California question I asked. Do you agree that the nature in which MST-related PTSD claims are adjudicated are subject to a high degree of subjectivity? Partially. For like a medium degree? No. The adjudication of these claims absolutely should not rest on bias of adjudicators, and that's why VA has review processes and checks in place to accuracy reviews for claims. But these kinds of claims, like many other claims throughout the system, inherently involve some discretion on the part of the adjudicator, just as adjudicators have to weigh credibility in all sorts of other kinds of claims. They weigh competing evidence and assign weight to evidence, and they, both adjudicators and doctors, have to assign ratings based on inherently subjective mental health criteria in many kinds of claims. And GAO actually did a report a number of years ago on this exact inherent kind of variation and discretion in the VA system, encouraging VA to track its numbers and try to impose some restraints. But that's necessarily how the system works, and these kinds of claims are no different. Thank you, Ms. Kidmiller. Ms. Tuchman? May it please the Court? I'd like to address a few points that were brought up just in the past argument. First, petitioners are not asking this Court to implement the precise language of our rule, but rather remand it back to the agency, as the VA has clearly misunderstood its authority. Can I ask you this hypothetical? Let's presume that the VA understands all these problems, and they agree that there's a higher rate of MST in the military than out, and that they have the legal authority to enact this looser evidentiary requirement if they want to. But they make the decision that the better way to do it is through what they said, through training, through various things to try to sensitize the adjudicators to the issue, rather than adopt what is, I'm sure you would admit, an over-inclusive presumption. Would that be arbitrary and capricious? Your Honor, petitioners believe that the letter itself was arbitrary and capricious, and that would be a fact they decided. Well, that's why I'm asking you the hypothetical, because I think we're dwelling a little too much on the precise words of the letter and not getting to the issue. I mean, there's two things here. I'm trying to get to your argument and whether you think it would be arbitrary and capricious to reject a position that you don't have to provide any corroborating evidence. Well, the VA's position is that its training is working, and that can't be because from 2011 to 2013, the grant rates actually declined from 55% to 49%. To the extent that petitioners believe that, without a presumption— What's your authority for that? That is cited on page 31 of our opening brief and in our appendix, Your Honor. But to the extent that petitioners believe that it is the discretion, with all of the corroborating evidence that is required, that creates this geographic lottery and inconsistent adjudication, and a presumption is exactly what is required to address this, and the VA does not disagree. The four other stressors that are correlated with causing PTSD have the presumption precisely because in the VA's direct language, they were difficult to prove and hard to prove claims. So it is inconceivable for the VA to explain that MST should be treated differently and require separate corroborating evidence when it is the reason they promulgated a fear-based PTSD presumption, precisely because they couldn't point it to specific places, types, and circumstances. And Congress has mandated that these presumptions should be in the veterans' favor. Second, I'd like to address that we are not asking for a lower standard for MST survivors. We are asking for the exact same standard that veterans get when they apply for benefits for fear-based PTSD, combat PTSD, prisoner of war PTSD, and in-service personal assault. It does require a fact-finding before they get these benefits. It's a medical diagnosis. They go to a VA doctor and they receive the PTSD diagnosis and the lay testimony of the veteran. This is not a heightened standard. This is not a special standard for MST survivors. Well, it is a little bit different standard on circumstances, though, right? Because for the combat-related presumption, they may not have to provide independent evidence that they were specifically in combat, but they have to go to service records or the like  Correct, and petitioners agree with that rule. We do not want to read places, types, and circumstances out of the— But yours is different. I mean, yours would go to the entirety of service, which I think is permissible, but it is different, isn't it? No, I disagree. The combat presumption was promulgated because, for instance, they speak in their records of examples of which the service record may indicate that they were deployed in a specific area, but it does not have the exact dates of a particular battle that occurred. And therefore, when a veteran comes back to receive their benefits, they are relying on the lay testimony. Just as a veteran who was sexually assaulted, it's likely not going to say in their service record that they reported because the DOD itself has acknowledged that 89% of veterans, and the VA has acknowledged that they do not report this. But it will be in their record, for instance, that they were serving in Afghanistan at a specific time. So therefore, if the veteran says, this is where I was and this is what I deployed, that is all the places, types, and circumstances language requires and mandates. You cited me to 31 of your blue brief for the declination from 55% to 49%. I'm not finding it. It should be in our appendix, and we can— I'd like a cite before we go off the bench. Okay. I will have that for you. Precisely because the VA's letter fails to address important factors such as this geographic disparity and gender disparity and misunderstand this authority under 1154A, we are asking for a remand back so that the agency can explain its denial. The stakes here, as my counsel has pointed out, cannot be overstated. This is the one benefit that falls mainly on the shoulders of women who have been fighting in our military. They have done the same service, fought the same wars, and are coming back and seeking the benefits that they deserve. They have the exact same medical diagnosis as their other service members with combat PTSD, fear-based PTSD, and there's no reason to believe that they should be treated any differently within an individual adjudicator's claim process. Let me just ask you one question. What I said to your opposing counsel, it would seem to me that military sexual trauma must result, not recorded, but in examination, it must result in PTSD a much higher amount of the time than combat related. Are there statistics on that?  In fact, MST is the most highly correlated stressor for PTSD than any other stressor. We can get those numbers for you as well in our brief. Before I close, I would just like to address, you mentioned to my co-counsel the Sapper Report. Briefly, Ms. Tuchman, because your time has expired. We do cite that on footnote 1113 and 30 to the VA's record that they did have the prevalence of sexual assault in the military before them as they were viewing the presumption. We recognize that it's a different agency, but those numbers were cited in the rule. Thank you. Are we still waiting for it? Yeah, I'm waiting for that sign. From 55% to 49% definition. You can send us a letter with that citation. Thank you. The case will be submitted. All rise.